UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:08CV-00132-EHJ

DARLENE DENO                                                                                            PLAINTIFF

VS.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                                   DEFENDANT

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

#### BACKGROUND

Before the Court is the complaint (DN 1) of Darlene Deno ("plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). Both the plaintiff (DN 10) and the defendant (DN 11) have filed a Fact and Law Summary.

The District Judge has referred the case to the undersigned United States Magistrate Judge (DN 9) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations. 28 U.S.C. Section 636(b)(1)(B). By Order entered January 16, 2009 (DN 9), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

#### FINDINGS OF FACT

On March 3, 2006 plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income benefits (Tr. 146-150, 151-156). Plaintiff alleged that she became

disabled on June 15, 2005 as a result of fluid around heart and slipped disc (Tr. 146, 151, 183). Administrative Law Judge James E. Craig ("ALJ") conducted a hearing on November 14, 2007 in Owensboro, Kentucky (Tr. 74). The plaintiff was present and represented by attorney Christopher Rhoads. Also present and testifying were Tabitha Bartos as a fact witness and Stephanie Barnes as a vocational expert (Tr. 74, 75).

In a decision dated January 16, 2008, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 11-20). At the first step, the ALJ found plaintiff had not engaged in substantial gainful activity since June 15, 2005, the alleged onset date (Tr. 13). At the second step, the ALJ determined that plaintiff's spine disorder, heart disorder, and chronic obstructive pulmonary disease ("COPD") are "severe" impairments within the meaning of the regulations (Tr. 13-16). At the third step, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 16).

At the fourth step, the ALJ found plaintiff has the residual functional capacity to perform less than a full range of sedentary work (Tr. 16-18). Specifically, the ALJ found plaintiff has the residual functional capacity to lift and carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk for up to two hours in an eight-hour workday; sit for up to six hours in an eight-hour workday but must be allowed to change positions at will; can only occasionally stoop or crouch; can never kneel or crawl; should avoid repetitive pushing/pulling with the upper and lower extremities; should avoid work performed around temperature extremes, wetness, humidity, dangerous machinery, unprotected heights or respiratory irritants; should avoid work that requires carrying out detailed instructions or making complex decisions (Tr. 16). Based upon these

residual functional capacity findings the ALJ concluded plaintiff was unable to perform any past relevant work (Tr. 18).

At the fifth step, the ALJ considered plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 18-19). The ALJ found that plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 19). Therefore, the ALJ concluded that plaintiff was not disabled from June 15, 2005 through the date of the decision (Tr. 19-20).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 7). In support of the request, plaintiff submitted a brief and supporting medical evidence (Tr. 32-72). The Appeals Council considered the material submitted in support of plaintiff's request for review but concluded there was no reason to grant plaintiff's request for review (Tr. 1-3).

## CONCLUSIONS OF LAW

The Social Security Act ("Act") authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. Sections 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have an impairment or combination of impairments that significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that satisfies the duration requirement and meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); See 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Serv's., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Serv's., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the

4

challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Secretary of Health and Human Serv's., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Serv's., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

The undersigned will now address plaintiff's challenges to the final decision of the Commissioner. In conjunction with the fourth step in the sequential evaluation process, the ALJ made findings regarding the weight assigned to medical source statements in the record[1], plaintiff's credibility[2], plaintiff's residual functional capacity[3], the physical and mental demands of plaintiff's past relevant work, and plaintiff's ability to return to the past relevant work (Tr. 16-18). 20 C.F.R. §§ 404.1520(e), 416.920(e).

Plaintiff argues the ALJ erred in failing to assign controlling weight to the October 30, 2007 medical opinion of the treating cardiologist, Dr. Jarvis (DN 10). She also argues the ALJ failed to state sufficient reasons for rejecting the October 30, 2007 medical opinion of Dr. Jarvis

---

[1] 20 C.F.R. §§ 404.1527(d), 416.927(d).

[2] In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 96-7p.

[3] The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946.

(DN 10). Defendant contends the ALJ did not err because the opinion of Dr. Jarvis is inconsistent with information in his own treatment notes, the September 24, 2005 medical opinion of Dr. Hunter, and the March 13, 2006 medical opinion of Dr. Witwer (DN 11).

While the regulations require Administrative Law Judges to evaluate every medical opinion in the record, the process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. §§ 404.1527(d), 416.927(d). Controlling weight is assigned to the medical opinion of a treating source only when it is both well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. Social Security Ruling 96-2p; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Bogle v. Sullivan, 998 F.2d 342, 347-348 (6th Cir. 1993); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 857 (6th Cir. 1990). Notably, if the medical opinion of a treating source is found not to be entitled to controlling weight then the Administrative Law Judge must determine how much weight it should be accorded and set forth in the administrative decision good reasons for the weight given to that medical opinion. Social Security Ruling 96-2p; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Wilson v. Commissioner of Social Security, 378 F.3d 541, 545-546 (6th Cir. 2004) (If an Administrative Law Judge discounts the opinion of a treating physician, the Administrative Law Judge must provide "good reasons" for doing so).

The October 30, 2007 opinion of Dr. Jarvis reads as follows:

> "I am the treating cardiologist of Ms. Darlene Deno. I have been treating Ms. Deno since approximately May of 2005. Ms. Deno was diagnosed in July of that year with a large pericardial effusion, as well as hyperlipidemia per her history. Her final diagnosis at that time, post surgery is myxedema heart disease with large pericardial effusion and cardiac tamponaide, as well as her history of

6

hyperlipidemia. Again, she was noted to have severe global cardiomegaly by exam on May 18, 2005, as well as a diagnosis of COPD and ankle edema.

Since that time, I have continued to treat Darlene on a regular basis, monitoring her cardiac disease closely. She continued to decompensate and on January of 2006, she was having episodes of being very ill, and having chest pain. We ordered a heart catherization, to rule out further damage. We also ordered an MRI of her lumbar spine, which showed multiple problems within the scope of her spine, including moderate stenosis, disc bulge, and facet joint changes. Her diagnosis in regard to this is degenerative lumbar disc disease with lumbar spondylolysis and bulging disc.

Due to the significance of Ms. Deno's medical diagnoses in combination and prognosis, she continues to suffer from significant dyspnea with minimal exertion. She presently suffers from shortness of breath and fatigue, chest pain on exertion and swelling. Given all of these medical comorbidities, in my opinion, this patient is not a candidate for any employment, sedentary or otherwise. Due to her lack of insurance, she seeks care for primary health problems with the McAuley Clinic, an indigent medical provider. In light of her long cardiac history, as well as her family history for severe cardiac problems and early cardiac related death, she needs to be followed more closely.

In regard to her ability to complete her activities of daily living, she is highly compromised. She is unable to be on her feet for very long, given the edema in her ankles. She must rest often with her feet elevated on an as needed basis, for approximately one to two hours, a few times per ordinary work-day type hours. This is my best estimate in this regard. Her ability to walk for any length would also be compromised due to her shortness of breath with exertion; she would not be able to do this. Her ability to lift is compromised due to her lumbar disc disease, as well as any given exertion can exacerbate her chest pain. Her ability to sit for any extended period of time will be compromised due to the pressure sitting puts on the lumbar area, given this and the swelling she will experience in her ankles, she will need to be able to get up and move around, and elevate her feet.

Due to Ms. Deno's severe heart disease, I wrote reports on January 17, 2006 and again on August 16, 2006, where I advised Ms. Deno to seek disability. Factoring in Ms. Deno's chronic and severe heart

> disease, degenerative lumbar disease, and all the complications that she suffers from due to these conditions, it is my medical opinion, as her treating cardiologist, that she is permanently disabled. Her prognosis is guarded at best, given the severity of her diseases. Should you need any further information regarding this patient, please do not hesitate to contact my office."

(Tr. 603).

Referring to the final paragraph of the opinion, the ALJ indicated no weight would be accorded to Dr. Jarvis' determination of disability because it is an administrative finding reserved to the Commissioner (Tr. 15). The ALJ's reasoning comports with applicable law. Social Security Ruling 96-5p.

The undersigned will now address each of the reasons the ALJ gave for discounting Dr. Jarvis' medical opinion on the functional limitations imposed by plaintiff's physical impairments. The first reason the ALJ gave is Dr. Jarvis, in the final paragraph of the opinion, mistakenly indicates he advised plaintiff to apply for disability in a letter of August 16, 2006 (Tr. 15). This is a minor oversight on a collateral issue. Therefore, this mistake is not substantial evidence that supports the ALJ's decision to discount all of the functional limitations in Dr. Jarvis' medical opinion.

Next, the ALJ noted that Dr. Jarvis indicated plaintiff has shortness of breath and chest pain (Tr. 15). The ALJ discounted the shortness of breath with a finding it is exacerbated by the fact that plaintiff "has not stopped smoking despite being told by her physician to do so" (Tr. 15). However, the ALJ's finding is based upon a questionable interpretation of a treatment note from McAuley Clinic (Tr. 594). The treatment note indicates plaintiff was "advised", rather than told, to stop smoking (Tr. 594). Further, the undersigned cannot determine from the treatment note whether this advice came from a doctor or a nurse (Tr. 594). Further, objective medical evidence

in the record supports Dr. Jarvis' opinion that plaintiff has shortness of breath due, in part, to COPD. The ALJ discounted mention of chest pain in the medical opinion because it is inconsistent with Dr. Jarvis' earlier statement that plaintiff's chest pain is non-cardiac in nature (Tr. 15, 456). While substantial evidence supports this finding and this finding may impact the weight accorded to one or more functional limitation expressed by Dr. Jarvis, it does not constitute substantial evidence to support a decision to discount all of the functional limitations in the medical opinion.

Next, the ALJ noted that Dr. Jarvis' limitations regarding plaintiff's back pain are based upon findings set forth in the February 2006 MRI report (Tr. 15). The ALJ discounted these limitations because he believed the December 2006 MRI report actually showed some improvement in plaintiff's degenerative disc disease since February 2006 (Tr. 15). However, the ALJ is simply not qualified to interpret the raw medical data in these MRI reports and no medical opinion in the record supports the ALJ's determination.[4] Nguyen v. Chater, 172 f3d 31, 35 (1st Cir. 1999). Therefore, this reason does not constitute substantial evidence to support a decision to discount all of the functional limitations in Dr. Jarvis' medical opinion.

Next, the ALJ discounted the specific work limitations in the medical opinion merely because Dr. Jarvis' treatment records do not set out specific work limitations (Tr. 15). However, there is no evidence in the record indicating Dr. Jarvis had a reason to express specific work limitations in his treatment records for this patient. Therefore, the mere absence of specific work limitations in Dr. Jarvis' treatment records cannot constitute substantial evidence to support a decision to discount all of the functional limitations in Dr. Jarvis' medical opinion. In sum, while

---

[4] The radiology report indicates the MRI study of December 4, 2006 was compared with the prior MRI study of February 16, 2006 (Tr. 586). However, it does not set forth a determination that plaintiff's degenerative disc disease has improved (Tr. 586).

9

the above reasons may impact the weight accorded one or more functional limitations expressed by Dr. Jarvis, they do not constitute substantial evidence to support the ALJ's decision to discount the entire medical opinion of Dr. Jarvis.

In addition to the reasons set forth above, Defendant argues Dr. Jarvis' opinions are inconsistent with the September 24, 2005 medical opinion of a consultative examiner, Dr. Hunter, and the March 13, 2006 medical opinion of Dr. Witwer (DN 11). Dr. Hunter's opinion indicates given plaintiff's "history of pericardial effusion with multiple medications as well as chronic bronchitis, advised that the patient increase exercise tolerance and also given the history of the chest pain she gets when only walking short distance as well as decreased ability to stand for prolonged periods of time that limits this patient's ability to sustain gainful employment" (Tr. 351-353). The ALJ interpreted this opinion as essentially limiting plaintiff to sedentary work and suggesting she increase her exercise tolerance (Tr. 14). Assuming the ALJ's interpretation is correct, Dr. Hunter's opinion is inconsistent with Dr. Jarvis' opinion. However, Defendant overlooks the fact that Dr. Hunter's opinion is based upon plaintiff's medical history as of September 24, 2005 and a general physical examination on that date (Tr. 351-353). Thus, Dr. Hunter did not have the opportunity to review the February 2006 MRI report regarding plaintiff's lumbar spine (Tr. 393) and a number of subsequently performed cardiac tests (Tr. 392-396, 456, 457-458, 460, 462-463, 514, 532-535). Moreover, Dr. Hunter's opinion is inconsistent with subsequent less restrictive medical opinions from two non-examining State agency physicians and a second consultative examiner (compare Tr. 351-353 with Tr. 467- 473, 474-481, 557-564). In sum, Dr. Hunter's opinion does not represent substantial evidence to support the ALJ's decision to discount the medical opinion of Dr. Jarvis.

Apparently, Defendant overlooks the fact that Dr. Witwer performed a consultative

10

neurosurgical evaluation at the request of Dr. Jarvis (Tr. 410-411).  Thus, Dr. Jarvis probably considered Dr. Witwer's report of March 13, 2006, in formulating his medical opinion.  Based on an examination and review of the February 2006 MRI of plaintiff's lumbar spine[5], Dr. Witwer recommended conservative therapy but indicated if plaintiff continues to "experience severe back and left leg symptoms that flares up episodically over the next two months I would consider surgical decompression, lateral recess release and microlumbar discectomies at all three levels" (Tr. 411). Notably, plaintiff lacked medical insurance and money necessary to undergo physical therapy (Tr. 82, 96).  In sum, Dr. Witwer's opinion really does not represent substantial evidence to support the ALJ's decision to discount the medical opinion of Dr. Jarvis.

Notably, in assigning weight to the medical opinions in the record, the ALJ gave the greatest weight to the medical opinion of Dr. Hunter because it was more consistent with the objective evidence (Tr. 18).  This is ironic because much of the objective medical evidence in the record was developed after Dr. Hunter rendered his opinion.  Moreover, his opinion is inconsistent with the opinions of treating, examining, and non-examining physicians who had the opportunity to review more of the objective medical evidence in the record (compare Tr. 351-353 with Tr. 467-473, 474-481, 557-564, and 603).  In sum, the ALJ's finding regarding the weight assigned to the opinion of Dr. Hunter does not appear to be supported by substantial evidence in the record.

Notably, the vocational expert's testimony indicates that some of the limitations set forth in Dr. Jarvis' medical opinion would preclude plaintiff from performing any jobs (compare Tr. 106-107 with Tr. 603).  For example, Dr. Jarvis indicated due to the swelling plaintiff experiences

---

[5]Dr. Witwer noted that plaintiff has "severe degenerative changes in her lumbar spine 3-4, 4-5, and 5-6 with broad-based left-sided disc bulges at all three levels" (Tr. 410-411).

in her ankles, she must rest with her feet elevated for approximately one to two hours (Tr. 603). The vocational expert testified this limitation alone would preclude plaintiff from performing any jobs (Tr. 106). Clearly, plaintiff has been prejudiced as a result of the errors outlined above. The undersigned is cognizant of other arguments raised by plaintiff. However, the undersigned concludes it is not necessary to address the remainder of plaintiff's arguments because it is clear that the final decision of the Commissioner is not supported by substantial evidence in the record.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the final decision of the Commissioner is not supported by substantial evidence. The undersigned recommends that the final decision of the Commissioner be REVERSED and this matter be remanded to the Commissioner to remedy the defect identified above in the original proceedings. 42 U.S.C. § 405(g).

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and

recommendations as provided by the Court. If a party has objections, such objections must be filed within ten (10) days or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).


Copies:     Counsel